UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:09-CR-21-FL-2

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| TONY JAMES ROUSE, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on the motion by defendant Tony James Rouse ("defendant") (D.E. 37) to suppress statements he made during a custodial interrogation in state criminal cases related to the instant case. The government filed a response (D.E. 38) in opposition to the motion. The motion was referred to the undersigned Magistrate Judge for issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On 10 June 2009, the undersigned held a hearing on the motion. For the reasons stated below, defendant's motion should be allowed.

## PROCEDURAL BACKGROUND

On 10 September 2008, defendant was arrested by the Greenville Police Department and four cases asserting various state drug charges were brought against him and others ("related state cases"). (Transcript of Hearing ("Tr.") (D.E. 46) 7:4-9:11). Greenville Drug Task Force Detective Rose Edmonds ("Edmonds") and another officer interviewed defendant in those cases on 23 September 2008. (*Id.* 2:18-3:7; 15:3-7).

On 11 March 2009, defendant and co-defendant Antonio Maurice Rouse ("Antonio"), defendant's brother, were indicted in this court for at least some of the same conduct underlying the related state cases. (*See* Indictment (D.E. 7); Tr. 5:19-23). Defendant was named in four of the six

of the indictment: (1) conspiracy to distribute and possess with the intent to distribute more than 50 grams of cocaine base (*i.e.*, crack), beginning in or about 2005 and continuing until on or about 10 September 2008, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count 1); (2) possession with the intent to distribute more than 5 grams of crack, on or about 6 May 2008, in violation of 21 U.S.C. § 841(a)(1) (count 2); (3) distribution of more than 50 grams of crack, and aiding and abetting the same, on or about 26 August 2008, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count 4); and (4) possession with the intent to distribute more than 50 grams of crack, and aiding and abetting the same, on or about 10 September 2008, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count 6).

On 8 May 2009, defendant filed the instant motion to suppress. He seeks to suppress in this case the statements he made during the 23 September 2008 interview in the related state cases.

At the hearing on the motion, the government presented the testimony of Edmonds. (Tr. 2:18-39:4). The government also introduced six exhibits: (1) a *Miranda* warning/waiver form executed by defendant on 18 August 2008 in a previous state matter (Gov.'s Hrg. Ex. 1 ("Ex. 1"))[1]; (2) the *Miranda* warning/waiver form executed by defendant on 10 September 2008 in the related state cases (Gov.'s Hrg. Ex. 2 ("Ex. 2") (D.E. 37-3)); (3) the order assigning a public defender to represent defendant in the related state cases (Gov.'s Hrg. Ex. 3 ("Ex. 3")); (4) the Conditions of Release and Release Order entered in the related state cases on 23 September 2008 (Gov.'s Hrg. Ex. 4 ("Ex. 4")); (5) the Pitt County Detention Center Visitor Sign-in Log for the dates 9 September 2008 through 24 September 2008 (Gov.'s Hrg. Ex. 5 ("Ex. 5")); and (6) the Investigative Report prepared by Edmonds detailing her interview of defendant on 23 September 2008 (Gov.'s Hrg. Ex.

---

[1] The list of exhibits admitted at the suppression hearing can be found at D.E. 45.

6 ("Ex. 6")). Defendant called no witnesses and introduced no exhibits, although a copy of Ex. 2 was attached to defendant's memorandum.

## FINDINGS OF FACT

The material facts are not disputed. Prior to his 10 September 2008 arrest in the related state cases, defendant had been arrested twice. He was first arrested on 6 May 2008 on a drug charge in Greene County. (Tr. 3:16-22). Defendant was not advised of his *Miranda* rights in conjunction with this arrest. (*Id.* 3:23-4:1). Defendant was arrested again on 18 August 2008 for breaking and entering, larceny, and possession of stolen goods. (*Id.* 4:2-5:7). Defendant was advised of his rights on this occasion, but waived them. (Ex. 1; Tr. 4:7-14).[2]

Two other persons besides Antonio were arrested with defendant on 10 September 2008, Marcus Thomas and Cajron Hunter. (Tr. 7:4-8:23; 8:15-17). Following the arrest, Edmonds and Officer Antonio Braxton ("Braxton") provided the arrestees written *Miranda* warnings at the Greenville Police Department. (Tr. 9:12-18; 11:10-17). On the Greenville Police Department *Miranda* form, defendant indicated by check marks and his initials: (1) that he understood his right to remain silent and that anything he said could be used against him; (2) that he did not want to speak to the officers; and (3) following a section of the form that advised him of his right to an attorney and to have one present during questioning, that he did not want to speak to the officers without a lawyer present. (Ex. 2; Tr. 9:16-10:23; 29:24-30:15). Defendant thereby invoked his right to remain silent and right to have counsel present during custodial interrogation.[3]

---

[2] Defendant was not arrested in the instant federal case until on or about 8 April 2008. (*See* entry after D.E. 25).

[3] Defendant was effectively advised of and invoked his rights in spite of the design of the form. It sets out the right to remain silent, but then, if the defendant does not want to speak to the police, instructs, "DO NOT GO ANY FURTHER. SIGN AT THE BOTTOM." (Ex. 2). The effect of this instruction is to direct a defendant to skip over the explanation of the right to counsel, which appears below the explanation of the right to remain silent and above the signature block. Defendant did not, in fact, skip over the right to counsel section, as demonstrated by his responding to the one question

3

On the day of his arrest, defendant was charged by the State of North Carolina in Pitt County with five counts of trafficking in cocaine by possession; two counts of possession with the intent to sell and distribute cocaine; two counts of maintaining a vehicle/dwelling place for using, keeping, or selling controlled substances; two counts of possession of drug paraphernalia; and one count of possession of less than one half ounce of marijuana. (Ex. 4 at 1, 3, 5). On that same day, defendant appeared before a state magistrate who set defendant's appearance bond at $2 million. (Ex. 4 at 1, 3; Tr. 33:13-18). The following day, 11 September 2008, defendant appeared in Pitt County District Court and was appointed counsel from the Pitt County Public Defender's Office. (Ex. 3; Tr. 11:18-12:18; 33:13-34:22).

A week later, on 18 September 2008, Edmonds went to the Pitt County Detention Center ("Detention Center") to interview defendant's co-defendant, Thomas, at the request of Thomas' attorney. (Tr. 8:1-20; 14:18-15:2). Thomas wanted to cooperate so that he might have his bond reduced. (*Id.*). Thomas' attorney was present during the interview. (*Id.* 15:8-10).

Also on 18 September 2008, Edmonds received phone calls from the wife of Antonio and attorney Earl Brown ("Brown"), communicating Antonio's desire also to cooperate for a bond reduction. (*Id.* 15:16-16:22). The next day, Edmonds and Braxton went to the Detention Center to interview Antonio. (*Id.* 15:16-16:22). At the time of the interview, the officers provided Antonio

---

in it, and the instruction in the form to skip ahead therefore does not appear to have prejudiced defendant. It has long been held that there is no "precise formulation" of the warnings that must be used to satisfy the requirements of *Miranda*, *California v. Prysock*, 453 U.S. 355, 359 (1981), the warnings must nevertheless "convey the general rights enumerated in *Miranda*," *United States v. Frankson*, 83 F.3d 79, 82 (4th Circuit 1996). Because the defendant here did not follow the instruction in the form to skip over the explanation of the right to counsel, the court need not determine whether a defendant following the instruction would be adequately apprised of his *Miranda* rights.

4

with another *Miranda* form, which Antonio executed. (*Id.* 17:10-18). Subsequent to that interview, Antonio's bond was reduced and he was released.[4] (*Id.* 17:16-18:1).

On 22 September 2008, Brown, who did not represent defendant, met with defendant at the Detention Center. (Ex. 5 at 12; Ex. 6 at 1). Defendant requested that Brown contact Edmonds and tell her that defendant wanted to speak to her regarding a possible reduction of his bond. (Tr. 18:6-13; 35:6-24; 37:20-25). On that same day, Brown communicated defendant's request to Edmonds. (*Id.* 18:6-13). Edmonds did not know at the time that Brown was not defendant's attorney. (*Id.* 34:23-25).

On 23 September 2008, Edmonds and Braxton went to the Detention Center to meet with defendant. (*Id.* 18:14-19; 35:10-36:2; 37:15-23). Defendant's appointed attorney was not present during this interview. (*Id.* 18:20-19:1; 36:19-20). The officers did not re-advise defendant either orally or in writing of his *Miranda* rights (*id.* 19:2-7; 22:23-23:10; 36:10-15), and defendant did not expressly waive his rights either orally or in writing (*id.* 36:21-37:5). Edmonds told defendant that she came to speak with him as a result of the telephone call she received from Brown. (*Id.* 20:25-21:2). While Edmonds did not confirm with defendant that he had made the request, the record contains no evidence of him challenging her statement that he did.[5] (*Id.* 21:3-5; 36:5-9; 37:25-38:2). Defendant told Edmonds that he wanted to provide assistance to support a reduction in the amount of his bond. (*Id.* 20:19-21:2).

---

[4] Although Edmonds did not testify to the date of Antonio's release, the government states in its memorandum that the release occurred on 25 September 2008, which was after defendant's release. (*See* Gov.'s Mem. (D.E. 38) at 3).

[5] In his memorandum, defendant summarily asserts that defendant did not initiate the subsequent questioning by Edmonds. (*See* Def.'s Mem. (D.E. 37-2) at 6). However, at the hearing, defendant presented no evidence to support that position and did not mention it in his argument. Defendant thus appears to have abandoned the contention asserted in his memorandum. The court concludes that defendant's initiation of the 23 September 2008 interview is undisputed.

5

During the interview, defendant did not appear to be under the influence of any intoxicating substances, was coherent, and appeared to understand the conversation. (*Id.* 19:8-16). Edmonds and defendant discussed controlled drug buys that defendant could make if released. (*Id.* 21:7-16). Specifically, defendant provided Edmonds with details regarding the history of his own drug purchases and sales, the names and descriptions of persons from whom he had purchased drugs, and details regarding his activities and those of his co-defendants on the night of his arrest in the related state cases. (*Id.* 20:6-14; 21:7-9; 22:7-11; Ex. 6 at 1-3). On 23 September 2008, defendant's bond was reduced from $2 million to $15,000, and he was released. (Ex. 4; Tr. 23:14-17).

On 30 September 2008, Brown contacted Edmonds to communicate that the third co-defendant, Hunter, wanted to cooperate for a bond reduction. (Tr. 23:23-24:3). Hunter was interviewed by Edmonds and Braxton, and, during the interview, Hunter executed a new *Miranda* form. (*Id.* 24:4-17). Subsequent to the interview, Hunter's bond was reduced and he was released. (*Id.* 24:18-23).

## **DISCUSSION**

Defendant seeks suppression of his 23 September 2008 statements on two principal grounds. First, he contends that investigating officers violated his Fifth Amendment rights by failing to re-advise him of his *Miranda* rights and obtain a valid waiver of his right to have counsel present after he had invoked his right under *Miranda* upon his arrest on 10 September 2008 to have counsel present at any questioning. Second, he argues that the investigating officers violated his Sixth Amendment right to counsel based on the same conduct. The court will discuss each of these arguments in turn.

6

I.   DEFENDANT'S FIFTH AMENDMENT RIGHTS UNDER *MIRANDA*

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. To protect this right, the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966) established rules governing custodial interrogations. 384 U.S. at 479. *Miranda* requires that, prior to questioning, a suspect who is in custody must be informed "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* Questioning may proceed only if the person lawfully waives his rights. *Id.*

*Miranda* conditions the admissibility at trial of any custodial statements on compliance with the warning procedure. *Id.* "'[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.'" *United States v. Mashburn*, 406 F.3d 303, 306 (4th Cir. 2005) (quoting *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)). The exclusion applies to the government's case-in-chief, but not necessarily other uses. "The Supreme Court has repeatedly held that although statements obtained in violation of *Miranda* are inadmissible in the government's case-in-chief at trial, such statements, if reliable, may be used for other purposes and in other ways." *United States v. Nichols*, 438 F.3d 437, 442 (4th Cir. 2006) (citing *Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("[T]he *Miranda* presumption [of compelled testimony], though irrebuttable for purposes of the prosecution's case-in-chief, does not require that the statements and their fruits be discarded as inherently tainted.")).[6] Because the remedy of

---

[6] The scope of the exclusion remedy for *Miranda* violations is therefore not as broad as the exclusionary rule for Fourth Amendment violations, which precludes the use of both the direct and indirect products of an unlawful search (*i.e.*, the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun v. United States*, 371 U.S. 471 (1963)). *Elstad*, 470 U.S. at 306-07.

7

exclusion is available to a defendant in any criminal trial regardless of whether the violation is committed by federal, state, or local officials, it is available to a defendant in a federal criminal case although the violation was by state or local law enforcement, as alleged here. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (noting that the exclusion remedy applies to "any subsequent criminal trial"); *see also* U.S. Const. amend. V (providing a right against self-incrimination in "any criminal case").

Once a defendant invokes his right to have counsel present during questioning, as the instant defendant did, the Supreme Court has "strongly indicated that additional safeguards are necessary" before custodial interrogation may be conducted. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). In determining the admissibility of statements made by a suspect after invoking this right, a court must make two separate inquiries: (1) whether the defendant initiated the contact with law enforcement which resulted in further interrogation; and (2) whether the defendant voluntarily, knowingly, and intelligently waived his right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983); *see also Poyner v. Murray*, 964 F.2d 1404, 1412-13 (4th Cir. 1992) ("[W]hether the suspect voluntarily, knowingly, and intelligently waived his right to counsel is a separate inquiry from the question of whether the suspect reinitiated interrogation."). The court will address each of these requirements in order below.

### A. Reinitiation of Contact with the Police

Under the Supreme Court's rule in *Edwards*, any interrogation in the absence of counsel must cease once a suspect invokes his right to counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85; *see also United States v. Johnson*, 400 F.3d 187, 193 (4th Cir. 2005). The purpose of this rule "is to

prevent police 'badgering or overreaching-explicit or subtle, deliberate or unintentional.'" *Johnson*, 400 F.3d at 193-94 (quoting *Smith v. Illinois*, 469 U.S. 91, 98 (1984)). A defendant can initiate contact by expressing "a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46; *accord Howard v. Moore*, 131 F.3d 399, 411 n.12 (4th Cir. 1997) (quoting *Bradshaw*). Further, a defendant may properly communicate his interest in having further discussions with police through a third party. *See Savino v. Murray*, 82 F.3d 593, 599-600 (4th Cir. 1996) (holding that defendant reinitiated further conversation for *Edwards* purposes when defendant sent a note requesting to see the investigator); *see also Van Hook v. Anderson*, 488 F.3d 411, 418 (6th Cir. 2007) ("Thus, a suspect could . . . communicate a willingness and a desire to talk with police through a third person. Whether the communication is direct or indirect [through a third party] is immaterial–what is important is the impetus for discussion comes from the suspect himself."); *United States v. Gonzalez*, 183 F.3d 1315, 1324 (11th Cir. 1999) (holding that a defendant's reinitiation of questioning by police can occur through defendant's wife without violating *Edwards*), *superseded by regulation on other grounds*.

Here, Edmonds' undisputed testimony shows that defendant reinitiated contact with the police. He directed Brown to ask Edmonds to meet with defendant and Brown did so. Moreover, defendant told Brown the purpose of the meeting was to speak to Edmonds regarding a possible reduction of his bond, which Brown also conveyed to Edmonds. Defendant thereby indicated "a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46.

Defendant's reinitiation of contact with the police appears consistent with that of his co-defendants Thomas and brother Antonio, who had contacted the police through others before

defendant did about cooperating with the police in exchange for a bond reduction. It is certainly conceivable that defendant had learned of these contacts, particularly since Brown contacted the police on Antonio's behalf, as he did defendant's. The remaining defendant, Hunter, re-initiated contact with the police for the same reason, again through Brown, after defendant was released.

The court concludes that the 23 September 2008 interview of defendant resulted from his reinitiation of contact with the police. The first requirement of the *Edwards* test is therefore satisfied. The question now becomes whether defendant validly waived counsel at the interview.

### B. Waiver of the Right to Counsel

As instructed by the Supreme Court, even when the defendant reinitiates contact with the police, "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Bradshaw*, 462 U.S. at 1044. The government has the burden of establishing waiver by a preponderance of the evidence, and "that burden is a heavy one, requiring convincing evidence." *United States v. Grant*, 549 F.2d 942, 946 (4th Cir. 1977), *vacated on other grounds sub nom. Whitehead v. United States*, 435 U.S. 912 (1978). A defendant does not have to utter any specific words for waiver to occur; rather, a defendant's "'subsequent willingness to answer questions after acknowledging [his] *Miranda* rights is sufficient to constitute an implied waiver.'" *United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996) (quoting *United States v. Velasquez*, 626 F.2d 314, 320 (3rd Cir. 1980)).

To be valid, "waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards*, 451 U.S. at 482. The inquiry into the validity of a waiver therefore has two distinct elements. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The court must determine, first, whether it was

10

voluntary and second, whether it was knowing and intelligent. *Id.* This determination is to be made based on the "'totality of the circumstances surrounding the interrogation.'" *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The court will discuss each of these two elements in turn.

### 1. *Voluntariness Element of Waiver*

To be considered voluntary, a waiver must be "'the product of a free and deliberate choice rather than intimidation, coercion, or deception' on the part of the police." *Poyner*, 964 F.2d at 1413 (quoting *Moran*, 475 U.S. at 421). The crucial test for determining if the waiver is voluntary "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Braxton*, 112 F.3d 777, 780-81 (4th Cir. 1997) (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)). In order to be considered involuntary under this test, there must have been "'coercive police activity.'" *Id.* at 780 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). In examining this element, the court "'must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.'" *Id.* at 781 (quoting *Pelton*, 835 F. 2d at 1071) (internal quotations omitted).

Here, there is no assertion by defendant, or any evidence, of misconduct, threats, promises, physical coercion, or deprivation by the police that would have coerced defendant to waive his rights. Edmonds' undisputed testimony indicates that she never attempted to visit or contact defendant until he asked to speak with her (Tr. 25:2-18; Ex. 5) and that she made no promises to defendant regarding reduction of his bond in exchange for cooperation (*id.* 19:23-20:1-2). Edmonds further testified, and the court finds, that her failure to re-advise defendant of his *Miranda* rights was merely an oversight (*id.* 23:4-10), as substantiated by the fact that she did re-advise Antonio and Hunter before their

11

interviews (*id.* 17:10-15; 24:10-14).[7] At the time of the interview, defendant appeared to be coherent and not under the influence of any substance. (*Id.* 19:8-16). More importantly, the evidence demonstrates that his conversation with Edmonds was motivated by self-interest, namely, reduction of his bond and release from jail. Accordingly, under the totality of the circumstances, the court concludes that when defendant spoke with Edmonds he voluntarily waived his right to have counsel present.

### 2.  *Knowing and Intelligent Element of Waiver*

To be knowing and intelligent, the waiver must have been made "'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005) (quoting *Moran*, 475 U.S. at 421). "Whether a waiver of the right to counsel was knowing and intelligent is determined by an examination of the totality of the circumstances surrounding the waiver." *Poyner*, 964 F.2d at 1413. The relevant factors include "the suspect's intelligence and education, age and familiarity with the criminal justice system, [and] the proximity of the waiver to the giving of the *Miranda* warnings . . . ." *Id.* (internal citations omitted); *see also United States v. Simmons*, 526 F. Supp. 2d 557, 565 (E.D.N.C. 2007).

**Intelligence and Education.** In this case, neither party presented any direct evidence of defendant's intelligence or education. However, defendant did appear to be able to respond appropriately to questions on the two *Miranda* forms in the record—one from his 18 August 2008 arrest and the other from his 10 September 2008 arrest. The 18 August 2008 form contains an

---

[7] The record does not indicate that Edmonds re-advised the remaining defendant, Thomas, of his rights immediately prior to interviewing him, but the presence of Thomas' attorney at the interview would appear to have obviated such a re-advisement.

12

express printed acknowledgment that the defendant has read it and understands his rights (Ex. 1), and the 10 September 2008 form a similar acknowledgment for the defendant's right to remain silent and use of anything he says against him (Ex. 2). Moreover, defendant waived his rights in the 18 August 2008 form but, of course, did not do so in the 10 September 2008 form, suggesting that he was not simply completing the forms in some unthinking, mechanical fashion.

In addition, he appears to have been able to communicate sufficiently well with Brown for him to have contacted Edmonds on defendant's behalf and with Edmonds for her to have supported reduction of defendant's bond. Further, no evidence was presented and no argument made that defendant lacked the intelligence or education needed for him to make an effective waiver. The court finds that neither defendant's intelligence nor education level precluded him from effectively waiving his right to counsel under *Miranda*.

**Age.** Defendant's age was also not disqualifying. The 10 September 2008 *Miranda* form gives his birth date. Based on that date, defendant was 32 years old in September 2008, well above the age of majority.

**Familiarity with the Criminal Justice System.** Regarding defendant's familiarity with the criminal justice system, the record shows that it was minimal. The government presented evidence of just two arrests prior to the arrest and interview in September 2008. The first occurred in May 2008. Although this arrest was only about four months before the 10 September 2008 arrest, defendant was not provided any *Miranda* warnings at that time. The May 2008 arrest therefore provided defendant no familiarity with his *Miranda* rights.

The second prior arrest occurred, as indicated, on 18 August 2008, and he was provided a *Miranda* form, which he completed. This experience did provide defendant an acquaintance with

13

his rights, particularly because it occurred only about three weeks before the 10 September 2008 arrest. However, the significance of this experience is diminished by the fact that it stands alone as defendant's only prior experience with *Miranda* before the 10 September 2008 arrest.[8] An instructive contrast is the Fourth Circuit's decision in *Poyner*. There, the court recognized that the defendant there had "*at least some familiarity* with his rights and with the process to which he would be subjected." *Poyner*, 964 F.2d at 1414 (emphasis added). The court described the defendant as "no stranger to the criminal justice system" with a criminal history that began when he was a juvenile and included 12 offenses, including some felonies. *Id.*, 964 F.2d at 1413-14. This record, of course, dwarfs the record of defendant in the instant case.

**Passage of Time Since *Miranda* Warnings.** In this case, there was a lapse of time between the administration of *Miranda* warnings to defendant and the interview of him. The courts have held that "[t]he mere passage of time . . . does not compromise a *Miranda* warning." *Frankson*, 83 F.3d at 83. However, they also recognize that a defendant's understanding of his rights and the consequences of the waiver thereof must eventually erode to a point of insufficiency. *See, e.g., United States v. Pruden*, 398 F.3d 241, 247 (3rd Cir. 2005) (acknowledging that a 20-hour period "seem[ed] to be at the upper end of the permissible range"); *United States v. Jones*, 147 F. Supp. 2d

---

[8] The *Miranda* form associated with the 18 August 2008 arrest (used by the Greene County Sheriff's Office) does not include the instruction found in the 10 September 2008 form (used by the Greenville Police Department), discussed previously, that directs a defendant who does not wish to speak to the police to skip over the explanation of his right to counsel. Rather, the 18 August 2008 form sets out the *Miranda* rights comprehensively above the signature block. Had the defendant here followed the instruction in the 10 September 2008 form and not read the explanation of his right to counsel, he would arguably have obtained from that form a different understanding of his rights than the 18 August 2008 form had provided him. Therefore, the difference in design of the forms could potentially have led to uncertainty on defendant's part over his rights. However, because defendant did not follow the instruction and did read the explanation of his right to counsel in the 10 September 2008 form, each form provided him substantially the same advisement of rights and the disparity in design of the forms would not, in fact, have been a source of uncertainty to defendant over his rights.

14

752, 762 (E.D. Mich. 2001) (concluding that, under the circumstances, *Miranda* warnings were stale after 18 hours). Courts have consistently and clearly held that a period of "several hours" would not invalidate a warning. *See Frankson*, 83 F.3d at 83 (approving period of 2 ½ hours and collecting cases upholding the *Miranda* warnings with similar time periods, *i.e.*, between 1 hour and 15 minutes and 9 hours). Courts have also upheld waivers where the *Miranda* warnings were given several days earlier. *See, e.g., United States v. Webb*, 311 Fed. Appx. 582, 584 (4th Cir. 2009) (approving four-day period). However, "[m]ost courts addressing the time factor have considered instances involving only a few hours." *Koger v. State*, 117 Nev. 138, 142, 17 P.3d 428, 431 (2001) (collecting federal cases).

In determining whether a certain period of time requires re-administration of *Miranda* warnings for a valid waiver, courts have considered the following five factors:

(1) The time lapse between the last *Miranda* warning and the defendant's statement;

(2) Interruptions in the continuity of the interrogation;

(3) Whether there was a change of location between the place where the last *Miranda* warnings were given and the place where the defendant's statements were made;

(4) Whether the same officer who gave the warnings also conducted the interrogation resulting in the defendant's statement; and

(5) Whether the statement elicited differed significantly from other statements which had been preceded by *Miranda* warnings.

*United States v. Hanton*, 418 F. Supp. 2d 757, 764 n.4 (W.D. Pa. 2006).

Here, 13 days passed between the time that defendant was advised of his *Miranda* rights and the time of his interview by Edmonds. There have been a limited number of cases in which courts have upheld a warning after the passage of a similar period of time. *See Martin v. Wainwright*, 770

F.2d 918, 930-31 (11th Cir. 1985), *modified on other grounds by* 781 F.2d 185 (1986) (upholding waiver where 7 days elapsed between the warning and interrogation); *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975) (11 days); *Koger v. State*, 117 Nev. 138, 144, 17 P.3d 428, 432 (Nev. 2001) (12 days). However, in each of those cases, the defendant was either summarily reminded of his or her rights and/or expressly acknowledged an awareness of his or her rights immediately prior to the interrogation. *See Martin*, 770 F.2d at 930-31 (defendant "expressly stated that she remembered her rights as previously explained to her" prior to the interrogation); *Biddy*, 516 F.2d at 121, 122 (5th Cir. 1975) (detective asked defendant, "Do you understand your rights?" and defendant replied that she did); *Koger*, 117 Nev. at 144, 17 P.3d at 432 (interrogating officer "inquired whether [defendant] had been advised of her *Miranda* rights before proceeding with the interview," and "[i]n response, [defendant] indicated that she remembered and understood her rights"). Neither of these critical facts is present here. The evidence shows that Edmonds did not discuss or even reference defendant's rights immediately prior to engaging in the 23 September 2008 interview. Nor is there any evidence that defendant acknowledged an awareness that the rights of which he was informed when arrested remained in effect.

As to the factors bearing on continuity, while Edmonds both administered the warnings to defendant and conducted the interview of him, she did so at two different locations, namely, the Greenville Police Department and the Pitt County Detention Center, respectively. Additionally, in the period between the arrest and interview, defendant attended two hearings, one before a magistrate and one before a district judge, where he was presumably advised of the charges and various legal rights. These intervening events in conjunction with the change in location could reasonably have

16

F.2d 918, 930-31 (11th Cir. 1985), *modified on other grounds by* 781 F.2d 185 (1986) (upholding waiver where 7 days elapsed between the warning and interrogation); *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975) (11 days); *Koger v. State*, 117 Nev. 138, 144, 17 P.3d 428, 432 (Nev. 2001) (12 days). However, in each of those cases, the defendant was either summarily reminded of his or her rights and/or expressly acknowledged an awareness of his or her rights immediately prior to the interrogation. *See Martin*, 770 F.2d at 930-31 (defendant "expressly stated that she remembered her rights as previously explained to her" prior to the interrogation); *Biddy*, 516 F.2d at 121, 122 (5th Cir. 1975) (detective asked defendant, "Do you understand your rights?" and defendant replied that she did); *Koger*, 117 Nev. at 144, 17 P.3d at 432 (interrogating officer "inquired whether [defendant] had been advised of her *Miranda* rights before proceeding with the interview," and "[i]n response, [defendant] indicated that she remembered and understood her rights"). Neither of these critical facts is present here. The evidence shows that Edmonds did not discuss or even reference defendant's rights immediately prior to engaging in the 23 September 2008 interview. Nor is there any evidence that defendant acknowledged an awareness that the rights of which he was informed when arrested remained in effect.

As to the factors bearing on continuity, while Edmonds both administered the warnings to defendant and conducted the interview of him, she did so at two different locations, namely, the Greenville Police Department and the Pitt County Detention Center, respectively. Additionally, in the period between the arrest and interview, defendant attended two hearings, one before a magistrate and one before a district judge, where he was presumably advised of the charges and various legal rights. These intervening events in conjunction with the change in location could reasonably have

16

Case 4:09-cr-00021-FL Document 48 Filed 07/21/09 Page 16 of 19

interfered with his recall of the rights communicated to him at the time of his arrest and clouded his understanding of the extent to which they applied when he was interviewed by Edmonds.

The susceptibility of one's recall and understanding of the *Miranda* rights to deterioration was dramatically illustrated at the hearing by Edmonds herself. Although a law enforcement officer for nine years, she was unable to recite the *Miranda* rights when requested to do so by defense counsel, stating, "I mean, I – I – I forget some of them." (Tr. 27:19-23). When asked to explain what the *Miranda* warnings are, she responded, erroneously, "When a person's convicted of a felony, we read him his *Miranda* rights." (*Id.* 27:16-18).

The court concludes that the passage of time between defendant's receipt of the *Miranda* warnings and the interview of him, along with the related factors discussed, rendered the *Miranda* warnings stale. Thus, the record does not establish that the *Miranda* warnings provided defendant at the time of his arrest gave him an adequate understanding of his right to have counsel present when he was interviewed by Edmonds.

**Totality of the Circumstances.** Considering the totality of the circumstances, the court finds that the government has failed to meet its burden of showing that defendant knowingly and intelligently waived his right to counsel before being interviewed by Edmonds on 23 September 2008. It is true that defendant had been advised of his *Miranda* rights upon his arrest, including his right to have counsel present, and that he had the capacity to understand them and did apparently understand them at that time. However, the passage of almost two weeks between his receipt of the warnings and the interview, coupled with the intervening events and change in locations, vitiated the effectiveness of the warnings. Defendant lacked significant experience with the criminal justice system which might otherwise have provided him an adequate understanding of his right to have

17

counsel present when he was interviewed. The statements he made at the interview were accordingly obtained in violation of the Fifth Amendment and should be suppressed.

## II. DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL

As indicated, defendant also contends that his statements on 23 September 2008 were obtained in violation of his Sixth Amendment right to counsel. The court agrees.

The Supreme Court has held that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," including interrogation by the police. *Montejo v. Louisiana*, – U.S. –, –, 129 S. Ct. 2079, 2085 (2009). A defendant may waive his Sixth Amendment right to counsel although he is already represented by counsel, and the decision to waive need not itself be counseled. *Id.* Generally, a defendant waives his Sixth Amendment right to counsel if he is read his *Miranda* rights and agrees to waive them, even though the *Miranda* rights are grounded in the Fifth Amendment. *Id.* A waiver of the Sixth Amendment right to counsel "will be evaluated under the same analysis as are waivers of the fifth amendment right under *Miranda*." *Poyner*, 964 F.2d at 1414 n.5.

Here, defendant was charged on the date of his arrest, 10 September 2008. Therefore, the adversary judicial process had been initiated against him, and his Sixth Amendment right to counsel had accrued, by the time of his interview on 23 September 2008. Defendant did not, of course, have counsel present at the interview. For the same reasons previously stated with respect to his Fifth Amendment right to counsel, defendant did not make a knowing and intelligent waiver of his Sixth Amendment right to have counsel present. The court concludes that the statements by defendant at the 23 September 2008 interview were made in violation of his Sixth Amendment right to counsel.

18

The statements should therefore be suppressed on this ground, independent of the Fifth Amendment violation.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendant's motion to suppress be ALLOWED and that all statements made by defendant during his 23 September 2008 interview by the police be EXCLUDED from use at trial in the government's case-in-chief as violative of defendant's rights under the Fifth and Sixth Amendments.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days or such other period as the court may direct in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this the 17th day of July, 2009.

James E. Gates
United States Magistrate Judge